# Morrow v. Campbell, et al.

*Action against Sheriff and his Sureties for Breach of his Official Bond.*

1. *Fraudulent conveyance; transfer in payment of debts.*—An absolute conveyance by an insolvent debtor of a part or the whole of his property to one of his creditors, in payment of a *bona fide* antecedent debt, which is not materially less than the fair and reasonable value of the property sold, there being no use or benefit reserved to the debtor, is valid regardless of the intent on the part of either or both of the parties to defraud other creditors.

2. *Same; effect of conveyance by debtor of all of his property; right of non-preferred creditors under the statute.*—Under the provisions of the act approved February 21st, 1893, (Acts of 1893–94, p. 1046), amending section 1737 of the Code of 1886, (Code of 1896, §2158), a conveyance by a debtor of substantially all of his property in payment of a prior debt, by

[Morrow v. Campbell, *et al.*]

which preference is given to one or more of his creditors over his remaining creditors, is not annulled, nor is it regarded as fraudulent; but such a conveyance creates a trust in favor of the non-preferred creditors of the grantor, which at their election enures to their benefit, and the vendee becomes a trustee holding the property for the equal benefit of all the creditors; and this trust is cognizable only in a court of equity, which has exclusive jurisdiction of its enforcement.

3. *Same; evidence as to fraudulent intent inadmissible.*—In an action where an absolute conveyance by an insolvent debtor to a creditor, in payment of a *bona fide* antecedent indebtedness, is attacked as fraudulent, evidence, the only tendency of which is to show a fraudulent motive or intent on the part of the vendor or vendee or both, is not pertinent to the issue involved and is inadmissible.

4. *Witness; impeachment can only be upon statements that are material.*—Only such statements of a witness as are material to the issue being tried can be the basis for proof of contradictory statements.

5. *Fraudulent conveyance; burden of proof in an action attacking a conveyance by debtor in payment of a debt.*—In an action attacking a sale made by an insolvent debtor to his creditor, in payment of an indebtedness, where the purchaser offers evidence tending to show a *bona fide* indebtedness which is not materially less than the value of the property, the burden is then shifted to the attacking creditor to prove that by the transaction a benefit was reserved to the debtor.

6. *Same; sufficiency of evidence; case at bar.*—In an action attacking a transfer by an insolvent debtor to a creditor in payment of a debt, where the purchaser introduces evidence tending to show that the indebtedness was created by his lending to the debtor money which he had taken as his share of the profits in a business which he managed for the debtor under an agreement that he was to receive one-half of the profits for his services, it is not incumbent on said purchaser, in order to prove the *bona fides* of the debt, the payment of which constituted the consideration of the sale, to enter into the details of the business and show to the reasonable satisfaction of the jury that profits had, in fact, accrued from the business during the operation of the agreement under which he had been employed.

7. *Same; validity of agreement between father and son as to payment of board by latter.*—A claim by the father for board furnished his son while living with him, is not a valid consideration, as against creditors, for a conveyance by the son of his property to his father, where there was no agree-

[Morrow v. Campbell, *et al.*]

ment, express or implied, on the part of the son to pay for
the board.

8.  *Same; relationship does not raise presumption of fraud.*—
    The kinship of the parties to a sale by an insolvent debtor
    to one of his creditors in payment of a debt, does not raise
    any presumption of fraud, nor require any higher degree of
    proof of the *bona fides* of the transaction than would be suf-
    ficient to reasonably satisfy the minds of the jury if the re-
    lationship did not exist.

9.  *Trial and its incidents; sufficiency of evidence; charge to the
    jury.*—In civil cases, the proper measure of proof is reason-
    able conviction or satisfaction of mind; and a charge which
    requires "clear and convincing proof" of the fact in issue,
    exacts too high a degree of proof and should not be given.

APPEAL from the Circuit Court of Marshall.
Tried before the Hon. J. A. BILBRO.

This action was begun on the 4th day of March, 1895,
by J. P. Morrow, Sr., against C. C. Campbell and the
sureties on his official bond, as sheriff of Marshall coun-
ty. The suit was on his bond, and the breaches com-
plained of are, (1.) That on the 1st day of January,
1895, while acting under color of his said office, the said
C. C. Campbell wrongfully seized and carried away a
stock of goods, wares, merchandise, liquors, and family
groceries, then in the Morrow saloon at Warrenton,
Ala., and the property of the plaintiff. (2.) That on
said day, while acting under color of his said office, the
said C. C. Campbell converted to his own use said prop-
erty. The amount of damage claimed was $1,000.

The defendants pleaded the general issue, and a spe-
cial plea averring that at the time of the acts com-
plained of the defendant, C. C. Campbell, as sheriff,
had in his hands several writs of attachment sued out
by the several creditors of W. H. Morrow, and that the
property was seized under and by virtue of said writs
of attachment, and that it was the property of said W.
H. Morrow. The material facts of the case are suffi-
ciently stated in the opinion.

The evidence showed that two or three days before
plaintiff's purchase, W. H. Morrow sold the mercantile
stock to one J. P. Morrow, Jr., a son of plaintiff and
brother of W. H., but that plaintiff had nothing to do
with the sale to his son of the mercantile stock and

[Morrow v. Campbell, et al.]

knew nothing of it until after it was made; that he did not know in fact of the sale of the mercantile stock until the morning of the day on which he bought. The plaintiff objected to any evidence of a sale to J. P. Morrow, Jr., on the ground that it was irrelevant, illegal, and immaterial. The court overruled the objection and plaintiff duly excepted.

Against the objection of the plaintiff, the court permitted defendants to show that J. P. Morrow, Jr., had paid only $510 in cash and given his due bill for $400 more for the mercantile stock, and that this stock invoiced between $1100 and $1200. The plaintiff objected to this evidence because irrelevant, illegal, and immaterial. The court overruled the objection and plaintiff excepted.

Against the objection of plaintiff, the court permitted defendants to introduce evidence tending to show that J. P. Morrow, Jr., did not have the $510 at the time he bought the mercantile stock. To this evidence plaintiff objected upon the same grounds. The court overruled the objection and plaintiff excepted.

The plaintiff objected to evidence of the details of the sale to J. P. Morrow, Jr., unless it was shown that plaintiff was connected therewith, on the ground that it was illegal, irrelevant, and immaterial. The court overruled the objection, and permitted defendants to give evidence tending to show that the sale of the mercantile stock was fraudulent. To this action of the court plaintiff excepted.

Against the objection of plaintiff, defendants were permitted to prove that in December, 1893, plaintiff had executed a mortgage to said W. H. Morrow, of which the consideration was stated to be $400, but the consideration was simulated and untrue, and that the mortgage was executed for the purpose of defrauding one Batty in the collection of a debt due him by plaintiff. To this evidence plaintiff objected because illegal, irrelevant and immaterial, but the court overruled the objection, and plaintiff excepted. There was some evidence tending to show that the expenditures of plaintiff for the years 1893 and 1894 exceeded his income from all sources, but as to this there was conflict.

The court, against the objection of plaintiff, permitted one W. H. Simpson to testify that on the morning

of the day plaintiff purchased, witness called on W. H. Morrow to pay a debt he owed A. D. Simpson & Co., and that Morrow told him 'he did not have the money, that he then asked Morrow to give his note, but he refused to do that, but that plaintiff was not present when this conversation occurred. To this evidence plaintiff objected because illegal, irrelevant, and immaterial. The court overruled the objection and plaintiff excepted.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that the burden of the proof is upon the defendants to reasonably satisfy the jury from the evidence that a pecuniary benefit or advantage was secured to W. H. Morrow by the transaction between him and the plaintiff." (2.) "The court charges the jury that if they believe the evidence in this case, there was no such interest reserved by W. H. Morrow as will vitiate the transaction between him and the plaintiff."

The court, at the request of the defendants, gave to the jury the following written charges, and to the giving of each of them, the plaintiff separately excepted: (1.) "The court charges the jury that they may look to all the circumstances and facts in evidence in this cause, including the relationship of the parties who participated in the transaction, and from the consideration of such relationship, if any, and the consideration of the fact that plaintiff in December, 1893, gave W. H. Morrow a mortgage on his property for the purpose of covering up his property to keep his creditors off him, and that it was without other consideration, if such be fact, and if the jury find from these circumstances or facts, if they be facts, and all the other evidence, that the transaction between W. H. Morrow and plaintiff as to the stock of liquors was for the purpose of putting the property of W. H. Morrow beyond the reach of his creditors and not in settlement of an honest, *bona fide* debt, their verdict should be for the defendant." (2.) "If the jury find that from all the evidence in the case that there was an implied or express agreement or understanding between W. H. Morrow and plaintiff, that on any future settlement as to the saloon business any

[Morrow v. Campbell, *et al.*]

difference between them would be adjusted, then this was a reservation of a benefit to the seller, which would render the transaction void." (3.) "The court charges the jury that if it was in the contemplation of W. H. Morrow and the plaintiff at the time of the alleged transfer of the stock of goods in the saloon, there was an understanding or agreement, either express or implied, or an expectation on the part of both of the parties that they would be living together and associating as in the past, by reason of their relationship of father and son, enable the said plaintiff to better provide for the support of his family and himself, and that it was within the reasonable contemplation of the parties that the said W. H. Morrow should continue to reside with the father as a member of his family, then this was the reservation of a benefit to the seller which the law forbids, and rendered the transaction null and void." (4.) "The court charges the jury that if J. P. Morrow, the plaintiff, was in the employment of W. H. Morrow in conducting a saloon business, under an agreement that he was to have one-half of the profits of the business for the year, and that the plaintiff took about $200 of proceeds of sale of goods in said saloon and turned it over to the said W. H. Morrow, then this did not constitute a loan on the part of J. P. Morrow to W. H. Morrow." (5.) "Before the jury can find that there was an indebtedness on the part of W. H. Morrow to J. P. Morrow, the plaintiff, on account of the employment in his saloon, the plaintiff must show to the reasonable satisfaction of the jury that there had been a profit in such saloon business, and the amount of such profit, or that it was equal to or exceeded the amount of the alleged indebtedness of said W. H. Morrow to said J. P. Morrow on that amount." (5.) "The court charges the jury that in this case, if the jury find from all the evidence that all the plaintiff's witnesses are related, and that the transaction in and about the sale of the saloon was between father and son, then clear and convincing proof of the *bona fides* of the transaction must be given before the plaintiff can recover." (7.) "The court charges the jury that unless there was an agreement, express or implied, on the part of W. H. Morrow to J. P. Morrow, the plaintiff, for his board before the com-

[Morrow v. Campbell, *et al.*]

. mencement of the negotiations for the sale of the stock in the saloon, then this would not constitute a *bona fide* debt as to the board, and the verdict of the jury should be for the defendant." (8.) "The fact, if it be a fact, that the transaction about the sale of the saloon was had between father and son should be closely scrutinized by the jury, in determining whether or not the sale was fair and the debt was a *bona fide* debt."

There were verdict and judgment for the defendants. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

O. D. STREET, for appellant.—1. Under the law as settled by numerous decisions of this court the questions of material inquiry before the jury were, (1.) Was W. H. Morrow indebted to plaintiff in a sum not greatly less than the value of the property? (2.) Did plaintiff receive and accept the property in absolute payment of his debt? (3). Was any pecuniary benefit or advantage secured to W. H. Morrow?

We will strip this case of much of its seeming perplexity if we will only remember that these were the questions and the only questions of proper inquiry before the jury, and that if the first two of the above questions are answered in the affirmative and the third in the negative, then it is wholly immaterial what may have been the intention of the parties.—*Crawford v. Kirksey*, 55 Ala. 293; *Hodges v. Coleman*, 76 Ala. 117; *Pollock v. Meyer*, 96 Ala. 172; *Danner v. Brewer*, 69 Ala. 191; Bump, Fraud. Con. pp. 19, 21, 29.

2. The rulings of the court upon the evidence, to which exceptions were reserved, were erroneous. *Smith v. Rogers*, 1 S. & P. 317; *Jones v. Norris*, 2 Ala. 526; *Oden v. Rippetoe*, 4 Ala. 68; *Bilberry v. Mobley*, 21 Ala. 277; *Moses v. Dunham*, 71 Ala. 173; *Teague v. Lindsey*, 106 Ala. 266; *Abney v. Kingsland*, 10 Ala. 355.

3. The first charge requested by the plaintiff, clearly asserted the rule as to the burden of proving a reservation of a benefit to the debtor and should have been given.—*Hodges v. Coleman*, 76 Ala. 119; *Roswald v. Hobbie*, 85 Ala. 73; *Murray v. Heard*, 103 Ala. 400.

[Morrow v. Campbell, *et al.*]

4. The courts do not say that a general assignment for the benefit of creditors whereby a preference is sought to be given to one or more of the creditors is void. On the contrary, they hold that the conveyance is a lawful and valid one, and that only the attempted preference is void.—*Danner v. Brewer,* 69 Ala. 191. If, therefore, the conveyance from W. H. Morrow to plaintiff is to be regarded as a general assignment, it was nevertheless a lawful contract, and being lawful and actual (not merely colorable) it is immaterial what may have been the motive that prompted it.—Bump, Fraud. Conveyances, pp. 19, 21, 29.

LUSK & BELL, *contra.*—The relationship of parties will be taken into consideration in weighing the evidence.—*McTeers v. Perkins,* 106 Ala. 411. If the vendor have actual or constructive notice of seller's intent, the sale is fraudulent.—*Carter v. O'Bryan,* 105 Ala. 305. The ability of the purchaser to make purchase being questioned, he should show how he came by the money.—3 Brick. Dig. 522, §190. The relationship of the parties and the circumstances attending the purchase raise a presumption of *mala fides* and casts the burden on the plaintiff.—*Calhoun v. Hannan,* 87 Ala. 277; *Schloss v. McGuire,* 102 Ala. 626; *Marshall v. Croone,* 60 Ala. 121; 3 Brick. Dig. 522-523; *Lehman v. Greenhut,* 88 Ala. 478; *Reeves v. Skipper,* 94 Ala. 407; *Harrell v. Mitchell,* 61 Ala. 270.

BRICKELL, C. J.—This was an action in which the appellant was plaintiff, and the appellee, Campbell and the sureties on his official bond, as sheriff of Marshall county, were defendants. The breach of the official bond alleged in the complaint, is the seizure and taking away from the possession of the plaintiff a stock of liquors, the property of plaintiff, under certain writs of attachment issuing against his son, W. H. Morrow. The plaintiff claimed to have purchased the liquors from his son in payment of an antecedent indebtedness, prior to the levy of the attachments, and the validity of the sale was the real issue to be determined. The son was engaged in the liquor business during the year 1894, and also conducted a general mercantile business in the

same town, and plaintiff was clerking for him in the saloon under an agreement, made at the beginning of the year, by which he was to receive as compensation one-half of the profits of the saloon business. On December 29, 1894, two days before the issue and levy of the attachments, the former, being at the time insolvent, sold to appellant the stock of liquors, which were worth about $300, the alleged consideration of the sale being the absolute payment of an indebtedness of like amount, $100 of which was claimed to be due for board for the preceding year, and $200 for money loaned a few days before the sale, a part of which was money which the plaintiff had from time to time during the year taken out of the business as his share of the profits.

It is settled law in this State that a debtor, although insolvent or in failing circumstances, may sell a part or the whole of his property to one of his creditors in payment of an antecedent debt, and such sale will be upheld, on an attack by other creditors, if the debt was *bona fide*, in amount not materially less than the fair and reasonable value of the property so sold, and no use or benefit, other than the liquidation of the debt, was reserved to the debtor. When such sale is attacked the only material inquiries are, the *bona fides* of the debt, the sufficiency of the consideration, to be measured by the value of the property, and the reservation of a benefit to the debtor. If the first of these inquiries be found affirmatively, and the last negatively, the title thus acquired by the purchaser is valid, unimpeachable by the creditors of the vendor. The fraudulent intent of one or both the parties to the transaction will not vitiate it, and the inquiry into their intent and motives is, therefore, immaterial.—*Hodges v. Coleman*, 76 Ala. 119; *Meyer & Co. v. Sulzbacher*, Ib. 120; *Knowles v. Street*, 87 Ala. 357; *Pollock v. Meyer*, 96 Ala. 172. Such has been the uniform ruling of this court since the case of *Hodges v. Coleman*, *supra*. Nor is such a transaction annulled and rendered fraudulent by the act of 1892-93, p. 1046, amendatory of section 1737 of the Code of 1886, (Code of 1896, §2158), providing that every conveyance by a debtor of substantially all his property in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors,

shall be and enure to the benefit of all the creditors of
the grantor equally. On the contrary, a court of
equity, as well as a court of law, will uphold the sale,
and treat the title as divested out of the vendor and
vested in the vendee, but, at the election of creditors, a
court of equity will impress upon the property a trust to
be executed for the equal benefit of all the creditors.
Such trust character is not cognizable and enforceable
in a court of law, and in neither court can the fraudu-
lent motives of the parties be considered.—*Gay, Hardie
& Co. v. Strickland,* 112 Ala. 567.

It results from the application of these rules, that
when such sale is attacked, evidence, the only tendency
of which is to show a fraudulent motive or intent on
the part of the vendor or vendee, or both, is not pertin-
ent to the issue involved. Such was the testimony, ad-
mitted against appellant's objection, tending to show
that a few days before appellant's purchase, W. H. Mor-
row sold to his brother the stock of goods in his other
store, and that the latter sale was fraudulent; and also
the testimony to the effect that a year previously ap-
pellant, for the purpose of defrauding his creditors, had
executed to W. H. Morrow a mortgage covering all his
property to secure a simulated indebtedness. The
court below erred in overruling the several objections
to the questions eliciting this testimony and in refusing
to exclude it. It was error also to admit the testimony
of the witness, Simpson, that on the morning of the day
appellant purchased the goods witness called on W. H.
Morrow and requested payment of a debt, and that the
latter told him he had no money, and refused to give
him a note, although said Morrow had previously testi-
fied that on that day he had $1,000 in money. If of-
fered to contradict and impeach W. H. Morrow, it was
inadmissible, since it was entirely immaterial whether
he had any money or not, and only such statements of
a witness as are material can be made the basis for
proof of contradictory statements.

In an action attacking a sale made by an insolvent
debtor in payment of an indebtedness, the purchaser
having offered evidence tending to show a *bona fide* in-
debtedness, not materially less than the reasonable
value of the property, the burden is then shifted to the

creditor to prove that by the transaction a benefit was reserved to the debtor. There is no evidence in the record the tendency of, or just inference from, which is that such benefit was reserved to W. H. Morrow in the transaction in controversy. Charges 1 and 2 requested by appellant should, therefore, have been given. Charge 1 given at the request of appellee, was erroneous in that it permitted the jury to consider the testimony which, as shown above, was irrelevant, namely, the execution of the mortgage by appellant a year previously. There was no evidence from which it could have been fairly inferred that there was an express, or implied, agreement betweeen W. H. Morrow and appellant that on some future settlement as to the saloon business any balance found to be due to either would be adjusted, and for this reason charge 2, given for appellee, was erroneous. The like criticism applies to charge 3, which, in addition, is so involved and confused as to be meaningless, or necessarily misleading. The evidence does not justify the hypothesis of facts upon which charge 4 is predicated, namely, that appellant "took about $200 of the proceeds of sale of goods in said saloon and turned it over to said W. H. Morrow." The only testimony on this subject was that from time to time during the year 1894, appellant "took out his half of the profits and turned the balance over to W. H. Morrow," and part of the $200 loan was of money thus acquired. It was not incumbent on appellant, in order to prove the *bona fides* of the debt the payment of which constituted the consideration of the sale, to enter into the details of the business done by the saloon, and show to the reasonable satisfaction of the jury that profits had in fact accrued from the business during the operation of the agreement under which he had been employed. Charge 5 should, therefore, have been refused. Charge 7 was properly given, since if there was no agreement, express or implied, on the part of W. H. Morrow to pay appellant for his board, then no indebtedness on this account was incurred. The kinship of the parties to a sale by an insolvent debtor to one of his creditors in payment of an indebtedness, does not raise any presumption of fraud, nor require any higher degree of proof of the *bona fides* of the transaction than

[Jones v. Matkin.]

would be sufficient to reasonably satisfy the minds of the jury if the relationship did not exist.—*Teague, Barnett & Co. v. Lindsey,* 106 Ala. 277; *Harmon v. McRae,* 91 Ala. 401. In civil causes the proper measure of proof is reasonable conviction or satisfaction of mind, and a charge which requires "clear and convincing" proof of a fact, exacts too high degree of proof.—*Wilcox v. Henderson,* 64 Ala. 535. Charge 6 was, therefore, erroneous and should have been refused.

Reversed and remanded.