# Teague, Barnett & Co. v. Lindsey, *et al.*

## Statutory Trial of the Right of Property.

1. *Sale; evidence of acts or declarations prior thereto.*—The acts or declarations of the vendor prior to a sale, not in disparagement of his title, are not competent evidence against the vendee; and in a trial of the right of property, where the claimant rests his right to the goods levied upon under the plaintiff's attachment upon a sale from the defendant in attachment, and the issue is as to the *bona fides* of such sale, entries made by the vendor, before the sale, in the books of the person from whom the goods were originally bought, showing payments on his purchase of the goods, are inadmissible in evidence.

2. *Same; acts or declarations of the vendor after sale.*—The acts or declarations of the vendor subsequent to the sale, of which the vendee has not knowledge, and in which he does not acquiesce, are, as to the vendee, *res inter alios acta*, and cannot be permitted to affect the title; and on a trial of the right to property, where the issue is as to the *bona fides* of the sale of a stock of goods, the fact that the vendor, after the sale of his stock of goods and accounts to the claimant, without the knowledge of the vendee, demanded payment of one of the accounts sold, is not admissible in evidence as tending to show that the sale was fraudulent.

3. *Exceptions reserved to refusal of the court to give charges requested.*—Where a general exception is reserved to the refusal of the court to give several instructions requested collectively, such exception can not be sustained unless all of the charges requested ought to have been given; and where two or more instructions are written on one sheet of paper, and being presented to the judge, he writes on the margin of the paper only the one word "Refused," signing his name thereto, the refusal is to the charges collectively, and not to each separately, and an exception to this refusal will not be sustained, unless all the charges should have been given.

4. *Charge of court to jury; circumstantial evidence; proof thereof.*—On a trial of the right of property, where the claimant's claim is attacked as being founded upon a sale of the property which was fraudulent and void, a charge which instructs the jury that fraud may be proved by circumstances, and "that there is no fact that is not the subject of proof by circumstantial evidence," and that "as the fraud vitiating a

[Teague, Barnett & Co. v. Lindsey, *et al.*]

transaction at the instance of creditors lies in the intention of parties to it, it is not generally susceptible of proof otherwise than by evidence of circumstances indicative of it," is properly refused, as being argumentative.

5. *Fraud; relationship does not raise presumption.*—Where the sale of a stock of goods is sought to be set aside as fraudulent and void, the mere fact that there was a kinship between the vendor and vendee, without other evidence tending to show bad faith, is not, of itself, a badge of fraud, and does not, of itself, raise the presumption of fraud, and, therefore, demand clearer proof of the good faith of the parties than if they were not related.

6. *Partnership; fraudulent conveyance.*—The individual debts of partners contracted in establishing a partnership may, by mutual consent, be converted into partnership debts, where the firm at its inception is not otherwise indebted; and a subsequent creditor of the partnership can not attack a sale of the firm's assets, because the assumption of such debts forms part of the consideration for said sale.

APPEAL from the Circuit Court of Tallapoosa.

Tried before the Hon. N. D. DENSON.

This was a statutory trial of the right of property which was inaugurated by the appellees, J. G. Lindsey and J. F. Moore, interposing a claim to property levied upon under a writ of attachment, issued at the instance of the appellees, Teague, Barnett & Company, against Lindsey & Moore, a partnership composed of W. J. Lindsey and A. L. Moore.

On the trial of the case, as is shown by the bill of exceptions, the plaintiffs introduced in evidence the writ of attachment against the firm of Lindsey & Moore, which was levied upon the goods claimed by the claimants on January 10, 1893. The property levied upon was a stock of merchandise. Plaintiffs then proved that the goods were found in the store-room occupied by the defendants in attachment as a retail store for about a year and a half, during which time they used and continued to own the same, and were in possession thereof on the morning of the levy and up to a short while before the levy was made; that the goods levied upon were of the value of about two hundred dollars, this being the aggregate of the separate value of each article, that plaintiff's debt was about two hundred dollars and had been in existence for about six months before the levy. Claimants then offered evidence tending to prove the following facts : That the attachment was levied about (10) ten o'clock, January 10, 1893 ; that the bill

of sale was written by Geo. A. Sorrell, Esq., on the night of the 9th of January, 1893, or the morning of the 10th January, 1893 ; that it was signed and delivered about 8 o'clock, January 10th, 1893, and the goods delivered to the claimants at that time ; that one of the purchasers and one of the sellers engaged Sorrell to write the bill of sale ; that A. L. Moore and W. J. Lindsey, the vendors, and J. G. Lindsey and J. F. Moore, the claimants, were all present at his office on the night of the 9th of January, 1893, and agreed to the terms of the sale ; that the consideration was made up of an amount due at the bank by Lindsey & Moore, for which J. G. Lindsey and J. F. Moore were securities, for $793, which amount was evidenced by a note for $950, of date January 10th, 1892, on which payments had been made, reducing the amount due on the note to $793.    The debt evidenced by the $950 note was made up of several small debts evidenced by notes made by Lindsey & Moore, with J. G. Lindsey and J. F. Moore as securities, and $300 evidenced by two notes made by W. J. Lindsey with J. G. Lindsey and J. M. Allen as sureties.    This amount of $300 was brought into and formed a part of the $950 note, but J. G. Lindsey and J. F. Moore testified that they did not know that these two notes made by W. J. Lindsey were included in this note, and had no information of their being so included, until about three months after the transfer of the stock of goods.    Claimants went to the bank and took up this note, on the 10th day of January, 1893, and made a note to the bank for the amount due thereon, being $793, and for $1,500 for a debt claimed to be due from Lindsey & Moore to claimants, with twelve *per cent.* interest *per annum* thereon, from the month of August, 1891.    This $1,500 was made up of $745 paid by J. G. Lindsey to his son, W. J. Lindsey, for the firm, sometime in August, 1891, and $400 paid by J. F. Moore to W. J. Lindsey, for the firm of Lindsey & Moore, paid sometime in August, 1891, which $400 was handed by J. F. Moore to W. J. Lindsey, with directions to put it in the safe, and $350 paid to his son, A. L. Moore, for the firm, which the evidence tended to show was paid on the 20th January, 1892, and there was also evidence tending to show that it was paid in August, 1891.    These several amounts, making $1,500, were the cash payment for a stock of goods sold by W.

[Teague, Barnett & Co. v. Lindsey, *et al.*]

H. Thornton in August, 1891, to W. J. Lindsey and A. L. Moore for about $3,000, one half of which was to be paid in cash, and the other half on time with interest. That claimant John G. Lindsey paid of this cash payment $745 to help his son, and went on W. J. Lindsey's note to W. H. Thornton for $750, and one J. M. Allen went on the note as security with him, but this note formed no part of the consideration of the bill of sale. The claimant J. F. Moore borrowed $400 from one Warren and handed it to W. J. Lindsey, for the firm of Lindsey & Moore, and told him to put it in the safe, and this, with a piece of land sold by A. L. Moore to W. H. Thornton at $500 made the cash payment to said W. H. Thornton of A. L. Moore's part; and claimant J. F. Moore went on A. L. Moore's note to said Thornton for the balance of A. L. Moore's half of the $1,500. On January 20, 1892, J. F. Moore borrowed from the bank $1,000, and loaned the firm of Lindsey & Moore $350 out of this money to pay W. H. Thornton, and the balance to make up the $1,500, his son's part of the purchase, his son paid himself. These several amounts were furnished or loaned by claimants to Lindsey & Moore to pay the purchase price of the stock of goods bought of Thornton, and they looked to the firm of Lindsey & Moore to pay the same back; but neither of the claimants took any note from Lindsey & Moore, or W. J. Lindsey or A. L. Moore, nor had any accounts been kept thereof. The money was loaned to their sons, and it was agreed when the money was loaned that the sons would pay the same interest their fathers had to pay, which was one *per cent. per* month. Claimants bought the entire stock of goods, wares and merchandise, fixtures, furniture and such accounts and notes as described in a schedule attached to the bill of sale, and this was substantially all the property and effects Lindsey & Moore had at the time of the purchase on the 10th day of January, 1893. The bill of sale to the property bought was signed by Lindsey & Moore, and recited the considerations of the purchase to be $2,533, made up of the $1,740 due from Lindsey & Moore to claimants for borrowed money, and the $793 which Lindsey & Moore owed the Alexander City Bank, for which J. G. Lindsey and J. F. Moore were sureties, which amount J. G. Lindsey and J. F. Moore agreed to pay. At the time of the purchase, no inventory of the

goods had been made, but immediately on delivery of the bill of sale, claimants took the possession of the goods and had an inventory made, which showed the goods sold amounted, at first cost with freight added, to about $2,040. The notes and accounts which were included in the sale, aggregated $596. The goods sold in bulk, as these were sold, were worth about 60 cents on the dollar, or $1.200 ; that the notes and accounts were worth much less than par value, about 50 cents on the dollar. The claimants bought the goods in payment of the debts due them, as shown in the bill of sale, and no interest was reserved by Lindsey & Moore in the goods or notes and accounts. Claimants then offered in evidence this bill of sale to J. G. Lindsey and J. F. Moore, executed by Lindsey & Moore, on the 10th day of January, 1893.

Plaintiffs, in rebuttal, proved that W. J. Lindsey, one of the defendants in attachment, was the son of claimant John G. Lindsey, and A. L. Moore, the other defendant in attachment, was the son of J. F. Moore, the other claimant ; that Lindsey & Moore, at the time of the sale to claimants, were insolvent, and that the property conveyed by the bill of sale included all the property the firm of Lindsey & Moore and W. J. Lindsey and A. L. Moore had or owned. That one of the plaintiffs was at the place of business of Lindsey & Moore on the day before the sale, at which time W. J. Lindsey promised to pay them $100 on their debt that evening, but failed to do so, and on the morning of the day of the sale, W. J. Lindsey promised to go out and get $100 to pay on plaintiffs' debt. While one of plaintiffs was in the store of Lindsey & Moore, on the morning of the day of sale, they were taking stock, and Mr. Barnett, one of the plaintiffs, inquired why they were taking stock, to which W. J. Lindsey replied that they intended to do it Christmas week, but the boys wouldn't work during the holidays. In making up the amount of the purchase price of the goods, as expressed in the bill of sale, $2,535, interest at the rate of 12 *per cent. per* year was counted on $1,500, from August, 1891, to the 10th of January, 1893, the date of sale, and the two notes due by W. J. Lindsey individually, amounting to $300, were included in the $950 note, and the $793 note, expressed in the bill of sale as part of the consideration of the purchase, was given in settlement of the said $950 note ; but the testimony

tended to show that J. G. Lindsey and J. F. Moore had no notice or knowledge of the inclusion of W. J. Lindsey's individual notes in the $950 note.    Plaintiffs offered in evidence the deposition of W. H. Thornton, which tended to prove that when he sold the stock of goods in August, 1891, he sold a one-half interest to A. L. Moore, and the other half interest to W. J. Lindsey; that he sold to them as individuals and not as partneis; that they bought the stock of goods as individuals, and not to form a partnership afterwards, but that they did form the partnership of Lindsey & Moore after they bought the stock of goods from him; that A. L. Moore paid him for his one-half interest, and W. J. Lindsey paid him for the other half; that the price of the stock of goods was about $3,000; that they each paid him part cash, about $750 each, and they each gave him their individual notes for the balance, $750 each.    A. L. Moore gave his father as security, on his note, and W. J. Lindsey gave his father as security on his note.    That the whole $3,000 was to be a cash consideration, and that he extended about half the amount, they each paying interest on the amount extended.

The plaintiffs then produced in court a book of accounts, and proved that it was the book used in the business of W. H. Thornton, from whom the original stock of goods was bought, and that the book was kept by W. J. Lindsey, one of the defendants in attachment, who was, at the time, the book-keeper of W. H. Thornton. The plaintiffs then offered in evidence certain entries, which were made in said book in the hand-writing of W. J. Lindsey, showing the payments on the purchase of the stock of goods by Lindsey & Moore from W. H. Thornton.    The claimants objected to the introduction in evidence of these entries.    The court sustained the objection, and the plaintiffs duly excepted.

Plaintiffs then offered evidence which tended to prove that, when claimants bought the goods, they and defendants estimated the goods, notes and accounts to be worth something over $2,500.    Plaintiffs then offered to prove by one J. J. Bailey, that about two months after the sale by defendants to claimants, on the 10th day of January, 1893, W. J. Lindsey came to him and demanded payment of his indebtedness to Lindsey & Moore, as shown in the schedule of notes and amounts attached to the bill

[Teague, Barnett & Co. v. Lindsey, *et al.*]

of sale. Claimants objected to the introduction of this evidence; and the court sustained the objection and excluded the evidence. To the ruling of the court in sustaining claimants' objection and excluding the evidence, plaintiffs duly excepted. Plaintiffs then offered to prove by same witness that, when W. J. Lindsey came to him and demanded payment of said indebtedness, he said he had his father's, J. G. Lindsey's, authority to collect the amount. Claimants objected to the introduction of the evidence, and the court sustained the objection and excluded the evidence. To this ruling of the court, plaintiffs duly excepted. Plaintiffs then offered evidence tending to show that the stock of goods in question was, at the time of the sale, worth about 85 cents on the dollar, and that the stock of goods was purchased by claimants and taken dollar for dollar, and that the notes and accounts were sold by defendants to claimants at their face value; that some time after the sale to claimants, W. J. Lindsey traded one of the accounts against one H. C. Willis, included in the bill of sale, to one S. J. Nolen, and took in payment therefor his, W. J. Lindsey's, note payable to said Nolen; that neither J. F. Moore nor J. G. Lindsey knew of this transaction until after it occurred, but when J. G. Lindsey was informed of it, he consented for the trade to stand.

Upon the introduction of all the evidence, the plaintiffs requested the court to give to the jury, among others, the following written charges: (1.) "It must not be supposed by the jury that fraud must be proved by direct and positive evidence. There is no fact that is not the subject of proof by circumstantial evidence; as the fraud vitiating a transaction, at the instance of creditors, lies in the intention of the parties to it, it is not generally susceptible of proof otherwise than by evidence of circumstances indicative of it." (3.) "The proof in this case shows that the relation, fathers and sons, existed between Lindsey & Moore and J. G. Lindsey and J. F. Moore, the sellers and buyers of the goods, which transaction is in question in this case; this being the case, the law requires clearer proof of the good faith on the part of the claimants, than if they were not related, before they can recover in this suit." (6.) "The jury, in ascertaining the *bona fides* of the consideration of the purchase of the goods by claimants from Lindsey &

Moore, will look to all the facts and circumstances surrounding the transaction, and if they believe from the evidence the usury of twelve *per cent.*, or any part of it, was added to the debt claimed by J. G. Lindsey and J. F. Moore against Lindsey & Moore, with the view of increasing the debt so as to make it equal the price they agreed to take the goods, notes and accounts at, then the sale is void, and the jury will find for plaintiffs." (7.) "If the jury believe from the evidence that in the consideration claimed to have been paid by J. G. Lindsey and J. F. Moore, for the goods, notes and accounts in question, that they knowingly included an individual note or notes due by W. J. Lindsey, and this was done with the view of making the consideration approximate the price of the goods agreed on between the parties, then the sale is fraudulent and void, and the jury will find for plaintiffs." (8.) "If the jury believe from the evidence that the $400 furnished to or for his son by J. F. Moore, was furnished to make the cash payment to Thornton, and the payment was made before the partnership was formed, then it was not a firm debt, and if it went into the consideration of the purchase of the goods by J. G. Lindsey and J. F. Moore, it vitiates the sale, and the jury must find for the plaintiffs." (9.) "If the jury believe from the evidence that J. G. Lindsey furnished his son, W. J. Lindsey, seven hundred and forty-five dollars to start him in business, and it was so furnished before the partnership of Lindsey & Moore was formed, then it was not a partnership debt; and if it formed a part of the consideration of the purchase of the stock of goods by J. G. Lindsey and J. F. Moore, it would vitiate the sale, and the jury must find for the plaintiffs." (10.) "The uncontroverted testimony in this case is, that J. F. Moore did not furnish the $350 out of the $1,000 he borrowed from the bank until January 20th, 1892, to his son to pay the balance or a part of it due to Thornton, and that when the sale was made on the 10th of January, 1893, the parties to the sale calculated 12 *per cent.* interest on $1,500 from August, 1891 to the 10th of January, 1893. This they had no right in law to do; and if the jury believe from all the evidence in this case it was done for the purpose of swelling the consideration to the amount of the agreed price between the parties of the goods, notes and ac-

[Teague, Barnett & Co. v. Lindsey, *et al.*]

counts, then this sale is void, and the jury will find for the plaintiffs."

The manner in which the charges requested by the plaintiffs were asked, in that they were conjoined, is stated in the opinion. The 8th and 9th charges were also written on the same sheet of paper; and on the margin of said sheet of paper the presiding judge wrote only once the word "Refused," and signed his name thereto. The 10th charge was separately asked, and a separate exception reserved to its refusal. After stating the manner in which the charges were written on the same sheet of paper on which there was only written once the word "Refused," and signed by the judge, and after setting out each separate set of charges which were so conjoined, the bill of exceptions recites that "to this refusal of the court to give all of these charges, plaintiffs duly excepted."

There were verdict and judgment for the claimants. Plaintiffs appeal and assign as error the rulings of the court upon the evidence, and the refusal to give the several charges requested by them.

W. D. BULGER, for appellant.—It was competent for appellants to show by the evidence of J. J. Bailey, as offered by them, that one of the defendants, after the sale, had possession of the accounts included in the bill of sale collecting and appropriating the proceeds to his own use, as a circumstance attacking the *bona fides* of the sale.—*Crawford v. Kirksey,* 55 Ala. 282; *Tompkins v. Nichols,* 53 Ala. 197; *Hubbard v. Allen,* 59 Ala. 283.

The lower court should have given charge number one. It enunciates a correct proposition of law.—*Harrell v. Mitchell,* 61 Ala. 270.

The record shows that the debts owed for the purchase of this stock were individual debts, and could not be a valid consideration for the purchase of the goods from the firm, as was attempted to be done. It is a fraud on partnership creditors to apply partnership assets to the payment of individual debts, when the partnership had outstanding liabilities.—*Goldsmith v. Eichold Bros.,* 94 Ala. 116; Parsons on Contracts, §§ 247, 248.

The court should have given charges number three and four. They each contain correct enunciation of the

[Teague, Barnett & Co. v. Lindsey, *et al.*]

law.—*Lipscomb v. McClellan*, 72 Ala. 157; *Hubbard v. Allen*, 59 Ala. 283.

SORRELL & SORRELL and HENRY A. GARRETT, *contra.* The court properly excluded from the evidence the entries in the books, which were made prior to the sale to claimants.—*Murphy v. Butler*, 75 Ala. 381; *Moses v. Dunham*, 71 Ala. 173; *Pulliam v. Newberry*, 41 Ala. 168.

The fact that one of the vendors of the claimants tried to collect an account which was included in the sale, two months after the sale of the goods to claimants, was inadmissible in evidence.—*Glover v. Millings*, 3 Stew. & Port. 28; 1 Brickell Dig., 841, § 522; *Horn v. State*, 98 Ala. 23.

Charges asked, which were written upon the same paper, and there was one refusal as indicated by the signature of the judge, were properly refused.—*Horn v. State*, 98 Ala. 23. The third charge was properly refused as being argumentative and calculated to mislead the jury. The charges as to the individual indebtedness of the partners, constituting a part of the consideration for the conveyance of the partnership, were properly refused.—*Lehman v. Kelley*, 68 Ala. 192; *Birmingham U. R. R. Co. v. Hale*, 90 Ala. 8; *Loucheim v. Nat. Bank*, 98 Ala. 521; *Harris v. Russell*, 93 Ala. 59; *Palmer v. Scott*, 68 Ala. 380; *McPherson v. Foust*, 81 Ala. 295; *Jordon v. Pickett*, 78 Ala. 332; 3 Brick. Dig. 688, § 47.

BRICKELL, C. J.—The entries in the books of Thornton, made by the vendor, Lindsey, prior to the sale to the claimants, have no reference to the title to the goods in controversy, and were inadmissible. The acts or declarations of a vendor, prior to a sale, not in disparagement of his title, are not competent evidence against the vendee. The evidence proposed to be introduced of the subsequent conduct and declarations of Lindsey in reference to one of the claims transferred to the vendees, was equally inadmissible. The acts or declarations of a vendor subsequent to a sale, of which the vendee has not knowledge, and in which he does not acquiesce, are, as to the vendee, *res inter alios acta*, and cannot be permitted to affect him.

There are certain well settled rules, which must be observed in the reservations of exceptions to instructions

given, or to the refusal of instructions requested.    The
failure to observe these rules, not infrequently, renders
a revision  of  the instructions, impracticable,    without
violence to the rules upon which an  appellate  court  is
bound to proceed.    Error is never presumed; it must be
shown affirmatively ; it is not enough, that an appellate
court  can  not  see  that  the  judgment  of  the primary
court  was  right;  unless shown  to be  wrong, the pre-
sumption  of  rightfulness  prevails.    And ∙ a bill of  ex-
ceptions must show with precision  the error  of which
the party excepting complains.    It is upon these rules,
the rules to which we refer, in relation to  the  reserva-
tion of exceptions to  instructions given or  refused  are
based.    If, as in the present case,  the  reservation is of
an exception  to the refusal of several instructions re-
quested,  the  exception must point  out clearly the in-
struction to which it is directed.    If it be directed to the
refusal of instructions collectively, it can not be  sustain-
ed,  unless  all  of  them  ought  to have been given.—3
Brick. Dig. 80, § 41 ; *Horn v. State*, 98 Ala. 23.

The statute requires the judge presiding, when instruc-
tions in writing are requested, (and he is under no duty
to give an instruction not in  writing), to  write thereon,
"Given," or "Refused," signing his name thereto.    The
statute manifestly contemplates the request of separate,
single, not of collective, or a mass  of  instructions.    In
this  case, two  or  more instructions were  written on a
sheet of paper, presented to the judge, and he  wrote  on
the  margin of the  paper the  word refused, signing his
name thereto.    The refusal is necessarily referred to the
instructions as requested—to them  collectively, and not
to each separately; and this compels the inquiry whether
the instructions, as an  entirety, are correct.    If they be
not  correct as  a  whole,  there  is no revisable error in
their refusal.

The first and  second instructions  were  requested to-
gether.    The first instruction was intended to assert the
familiar proposition, that fraud may be proved by cir-
cumstances; that positive, direct evidence of it, as distin-
guised from circumstantial  evidence, is  not  necessary.
It passes, however, beyond the precise statement  of the
proposition, and purports to give a  reason  for  the  pro-
position, which has been often  assigned  when  sales by
a failing debtor are made to a creditor.    The practice of

[Teague, Barnett & Co. v. Lindsey, *et al.*]

injecting arguments into instructions, there is a necessity for condemning at every term of the court; and counsel requesting them, take the risk of refusal by the primary court, and if they are refused, the action of the court is not an error revisable.   It is of consequence, unnecessary to consider the second instruction.

The third, fourth and fifth instructions were conjoined and requested.   The third can not be accepted as stating a correct legal proposition.   The relationship—the kindship, as in this case—of vendor and vendee is not of itself a badge of fraud, and of itself does not demand clearer proof of the good faith of the parties.   It is a fact, as would be the existence of confidential relations between the parties, relevant in all cases, but dependent for its value upon other circumstances with which it may be connected.   When fairly analyzed, the meaning of the instruction is, that from the relationship fraud will be presumed, unless there is clearer proof of good faith, than would be sufficient to satisfy the jury of the good faith of the parties, if the relationship did not exist; in other words, in violation of the maxim of the law that fraud is not presumed, the presumption is raised and indulged from a single fact, · the relationship of the parties, unless it is neutralized by countervailing evidence.   Beside, without explanation, or additional instruction, the tendency of the instruction was to confuse the jury.   What measure of proof, was intended by the expression clearer proof, was left undefined, committed to the conjecture or speculation of the jury.   In all its aspects, the instruction was erroneous, and was properly refused; and of consequence, an examination of the instructions numbered four and five, is not necessary or proper.   ·

The sixth and seventh instructions were, like the preceding instructions conjoined.   Each of them may assert a correct legal proposition, but they are without evidence to support them.   The uncontroverted evidence is, that the rate of interest the vendor agreed to pay, and agreed to pay long prior to the sale, was the rate of interest the vendees had to pay for the money borrowed to loan them.   There was no fact in evidence to show, that the excessive interest was added, to employ the words of the instruction, "with the view of increasing the debt, so as to make it equal the price,"

agreed to be paid for the goods, notes and accounts. The seventh instruction is, if possible, more objectionable than the sixth. Without conflict the evidence shows that the inclusion of the separate debt of one of the partners in the note the vendees had indorsed for the vendors, was not known to, nor had they any notice of it, until three months or more after the sale and after payment of the note. There is no error in the refusal of instructions which are abstract, not relevant to facts there is evidence tending to prove. It is seldom, such instructions are harmless, and they may mislead the jury, leaving them to infer the existence of facts which will support the instruction, contrary to the evidence and to its legal tendencies.—1 Brick. Dig. 338, § 41.

The eight and ninth instructions may be considered in connection. A partnership in contemplation of law, is an entity distinct from the members who compose it, and if the partnership is insolvent, or in failing circumstances, an appropriation of the partnership property or assets to pay the separate debt of a partner, is a fraud upon partnership creditors.—*Pritchett v. Pollock*, 82 Ala. 169 The capital of a partnership is that which each partner agrees to contribute as the basis for beginning or continuing the business.—1 Bates on Part , § 251. These contributions do not form partnership debts ; and if a member obtain them on his own credit, the fact that they pass into and enure to the benefit of the partnership, does not render the partnership liable to his creditor.—1 Bates on Part., § 446. But when the rights of partnership creditors have not intervened, the separate debt the partner has so created, by the consent of the several partners, may be converted into a partnership debt.—1 Bates on Part., § 515. In the original purchase of the goods from Thornton, each partner created a separate debt. If the purchase was not in point of time precisely coincident with the formation of the partnership, it was made in contemplation of it, and of a partnership on a basis of equality between the partners. On the commencement of the business of the partnership, their separate debts were converted into the debts of the partnership, the partnership not then owing any other debt. The debts in the new form given them were founded on an adequate and valuable consideration, and whatever may have been the relation of the

partners separately to Thornton, they became, as to the partners, partnership debts. The instructions we are considering ignore the uncontroverted evidence showing that the separate debts to Thornton were converted into partnership debts. They were of consequence, inappropriate to the evidence, and properly refused.—3 Brick. Dig. 111, §§ 79--83.

We do not deem it necessary to prolong this opinion by a discussion of the remaining instructions, to the refusal of which exceptions were reserved. They are either in themselves faulty; or they were conjoined, the good and bad so mingled, that for this reason the court below properly refused them.

We find no error in the record, and the judgment must be affirmed.